

**FILED**
DISTRICT COURT OF GUAM
OCT 09 2019
JEANNE G. QUINATA
CLERK OF COURT

# UNITED STATES DISTRICT COURT
for the
District of Guam

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )  Case No. MJ- 19-00077
Sole Residence and curtilage located on the right side of Route )
15 heading northbound with a yellow bus stop sign in Mangilao. )
(Further described in Attachment A (4 pages)) )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
Sole Residence and curtilage located on the right side of Route 15 heading northbound with a yellow bus stop sign in Mangilao. Further described in Attachment A (4 pages).

located in the _____ District of _____Guam_____, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B, incorporated herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 841(a)(1) 843b & 846 | Distribution of Methamphetamine, Use of Communication Facility and Conspiracy |

The application is based on these facts:

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

RICHARD A. TRACY, U.S. Postal Inspector
*Printed name and title*

Sworn to before me and signed in my presence.

Date: Oct. 9, 2019 6:24 pm.

_____
*Judge's signature*

City and state: Hagatna, Guam

FRANCES TYDINGCO-GATEWOOD, Chief Judge
*Printed name and title*

ORIGINAL

# AFFIDAVIT

I, RICHARD A. TRACY, being duly sworn, depose and say as follows:

## A. Background of Affiant

1. I am a federal agent employed with the United States Postal Inspection Service, currently assigned to the District of Guam, with twenty years of law enforcement experience, duly appointed according to law and acting as such. Part of my responsibilities is the investigation of controlled substances transported through the U.S. Postal Service, in violation of Title 21, United States Code, Sections 841(a)(1), 843(b), and 846 (the Drug Abuse Prevention and Control Act). I have experience investigating violations of illegal narcotics and have received training relative to criminal investigations and narcotics trafficking from the U.S. Postal Inspection Service.

2. I have participated in controlled deliveries of contraband and the execution of search warrants with respect to narcotics and scheduled controlled substances as well as investigations into narcotics trafficking organizations shipping contraband to and from Hawaii, California, Nevada, Arizona, Texas, Oregon, and Washington. I have received formal, informal and on the job training from U.S. Postal Inspectors, Assistant United States Attorneys, the Drug Enforcement Administration, and other law enforcement agents who have done extensive work regarding the investigations into the sales, distribution, and manufacture of controlled substances, specifically methamphetamine, as well as involving the proceeds from the sales of controlled substances.

3. All of the facts and information set forth in this affidavit were obtained through official law enforcement communications.

1

4. I know from my training, knowledge, and experience that the importers and distributors of controlled substances often utilize the U.S. Postal Service to facilitate the distribution of controlled substances. Such mail will come from foreign or domestic places of origin and will be typically sent by either Express Mail, Priority Express Mail, Priority Mail, Parcel Select, or First-Class Mail with or without a USPS tracking number.

5. I know from my personal experience and participation in the investigations of controlled substances sent via the mail, that witnesses, cooperating individuals, and informants have discussed and explained to law enforcement why the U.S. Mail system is used to facilitate the delivery of such controlled substances. I have also read official reports from other law enforcement officers detailing similar events.

6. I am familiar with the operation of illegal drug trafficking organizations (DTO) in the United States, and DTO with foreign nexus. I know from my training, knowledge and experience that the importers and distributors of controlled substances often utilize the U.S. Postal Service, and express freight forwarding cargo companies such as UPS, and FedEx to facilitate the distribution of controlled substances. Such express parcels will come from foreign or domestic places of origin and will be typically sent by Express, Priority, or First Class Mail.

7. I am aware based on my personal training and experience that criminals often use cellular phones to communicate instructions, plans and intentions to their criminal associates and to report on the progress of their criminal activities, and save the names and telephone numbers of these criminal associates as "contacts" on their cellular telephones or other electronic devices. I am aware that evidence of these instructions, plans, intentions, reports and general discussions of criminal activity are sent or received in the form of text messages,

2

incoming and outgoing call histories or voice messages left in personal voice mail system. I am familiar with the methods in which text messages are sent and received and know that third party phone applications, most commonly referred to as "Apps," are widely used.

8. I am also aware that these new "Apps" allow narcotics traffickers and smugglers to conduct financial transactions on their cellular telephones or other electronic devices via individual financial institution "Apps" to transfer money suspected to be the proceeds from the sale of illegal narcotics from one account to another without ever having to enter a physical location of that financial institution.

9. I am aware that cellular and electronic devices have the capability to store extensive financial records or information to include but not limited to, bank and credit card information, account information and other financial records. This capability allows narcotics traffickers to maintain their anonymity and lessen the likelihood of being discovered by law enforcement personnel.

10. I am aware that cellular and electronic devices have the capability to show and retain information regarding the ownership of the device, when files and additional information was created, edited or deleted, such as logs, registry entries, configuration files, usernames and passwords, documents, browsing history, user profiles, email contacts, "chat and instant messaging logs, photographs and correspondence.

11. I am aware that individuals involved in the distribution of illegal drugs conduct drug-related meetings and consummate transactions of narcotics in the privacy of their motor vehicles, in rental vehicles, and in hotel rooms and residences, to communicate instructions, plans and intentions to their associates; transfer or receive narcotics and money; and prepare and package narcotics for distribution. I am aware that evidence of these activities –

3

including but not limited to –packaging materials, weight scales, straws, ledgers, etc. are often found during the search of these locations.

12. Based upon my training, experience, and my participation in other investigations involving controlled substances, I know that individuals who distribute illegal drugs usually keep paraphernalia for packaging, cutting, weighing, and distributing controlled substances, and that such paraphernalia usually includes containers, precision scales, plastic bags, scissors and heat sealers.

13. I know that people who distribute illegal drugs commonly maintain books, records, receipts, notes, ledgers, and other papers relating to the expenses of the transportation, ordering, sale, and distribution of illegal drugs, and that such documents may be in code. Such individuals commonly "front" (provide controlled substances on consignment) drugs to their customers. These books, records, receipts, notes, ledgers, etc., are commonly maintained where the drug traffickers have ready access to them, such as their, homes, offices, automobiles and stash houses.

14. I know that those involved in the distribution of illegal drugs commonly hide contraband, proceeds of drug sales, and records of transactions, drug sources, and drug customers, in secure locations within their residences, their personal vehicles, rental vehicles, offices, garages, storage buildings, and safe deposit boxes, for ready access and to conceal such items from law enforcement authorities.

15. I know that individuals who distribute illegal drugs often possess weapons in order to protect themselves, their drugs, and their drug proceeds from others. These weapons vary including and not limited to firearms, destructive devices, and explosives. I know from my training, experience and discussions with other law enforcement officers including agents

from the Bureau of Alcohol Tobacco and Firearms that people who possess firearms keep their weapons for long periods of time and do not tend to readily dispose of their firearms.

16. I know that people who distribute illegal drugs commonly maintain addresses or telephone numbers in books or papers which reflect names, addresses, and/or telephone numbers of their customers and associates in their drug trafficking operations, and that sometimes these items are in code.

17. I know that those involved in the distribution of illegal drugs frequently take, or cause to be taken, photographs of themselves, their associates, their property, and their controlled substances, and usually maintain these photographs in their residences, offices, storage buildings and garages.

18. I know that articles of personal property, such as personal identification, personal correspondence, delivery pouches, diaries, checkbooks, notes, photographs, keys, utility bills, receipts, rent receipts, vehicle rental agreements, addressed envelopes, bills, keys, personal telephone, and address books, are essential to establish the identities of individuals in control or possession of the premises, residences, vehicles, storage areas, and containers being searched.

19. I know that individuals involved in the sale and transportation of illegal drugs will often use cellular smart phones, and other electronic devices to further their criminal activity, and maintain telephone bills which reflect their calls which facilitate the distribution of illegal drugs.

20. I know that people who distribute illegal drugs often maintain, on hand, large amounts of U.S. currency in order to maintain and finance their ongoing drug business. These individuals conceal caches of drugs, large amounts of currency, financial instruments,

5

precious metals, jewelry, and other items of value and/or proceeds of drug transactions, and evidence of financial transactions relating to obtaining, transferring, secreting, or spending of large sums of money made from engaging in drug trafficking activities, in their residences, offices, garages, storage buildings, automobiles, rental vehicles, and safety deposit boxes.

21. I know that those involved in the distribution of illegal drugs very often place assets in names other than their own to avoid detection of these assets by government agents. Even though those assets are in other person's names, the drug dealers continue to use those assets and exercise dominion and control over them. These individuals normally conduct a "cash and carry" type of business which can generate large volumes of currency. It is common for these persons to establish one or more bank accounts in which the currency is deposited. Records of these accounts normally consists of checking/savings account registers, checking/savings account statements, checking/savings account deposit slips, canceled checks, wire transfers, money orders, local, state and federal income tax reports, and other financial documents that identify the location of assets which have been obtained by illegal drug sales. Furthermore, these financial documents and records establish legitimate income and net worth, which assist in proving that assets in excess of legitimate sources are derived from drug sales and further prove intent to distribute drugs. Courts have recognized that unexplained income is probative evidence of crimes motivated by greed, in particular, drug trafficking. These individuals conceal/maintain these financial records/documents, in their residences, offices, garages, storage buildings, automobiles, rental vehicles, and safety deposit boxes.

22. I know that those involved in the distribution of illegal drugs often use drug proceeds/ill-gotten gains to purchase, precious metals, jewelry, and other items of value as

trophies/flash. These individuals conceal/maintain these items, in their residences, offices, garages, storage buildings, automobiles, rental vehicles, and safety deposit boxes.

23. I know that those involved in the distribution of illegal drugs use "Stash houses" (alternate addresses) to separate and conceal their drug distribution activities from family members and law enforcement personnel

24. The information contained within this affidavit is based upon my personal observations, training, and on information related to me by other law enforcement officers and investigators as set forth more fully herein. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence, fruits, and instrumentalities of the violations of 21 U.S.C. §§ 841(a)(1) and 846 are located within the vehicle described herein.

B. **Purpose of Affidavit**

25. This affidavit is submitted in support of an application for a Search Warrant for a **Sole Residence and curtilage located on the right side of Route 15 heading northbound with a yellow bus stop sign in Mangilao** further described in Attachment A (4 pages of pictures). I believe that evidence and instrumentalities, more particularly described in Attachment B, which is attached hereto and incorporated herein, will be found during the search of the vehicle.

C. **Relevant Facts pertaining to the Search Warrant for a Sole Residence and curtilage located on the right side of Route 15 heading northbound with a yellow bus stop sign in Mangilao**

26. On October 7, 2019, Chief Judge Frances Tydingco-Gatewood issued Search Warrant, MJ-19-00073, for a package addressed to Helen Mariano, 357 Jesus R. Mariano

7

Rd., Mangilao, Guam 96913. Hereafter referred to as the MARIANO package. Upon execution, approximately 450 grams of a white crystalline substance was discovered inside said package. The substance was subsequently removed from said package and field tested presumptive positive for the presence of methamphetamine.

27. On October 8, 2019, Chief Judge Frances Tydingco-Gatewood issued Tracking Warrant MJ 19-00074, for the MARIANO package along with an Anticipatory Warrant MJ 19-00075 for the residence of 357 Jesus R. Mariano Rd., Mangilao, Guam 96913.

28. On October 9, 2019, approximately 7:50 A.M., the MARIANO package was wired up with a breecher and a GPS tracking device. All the methamphetamine was removed and replaced with "sham." Sham is an item used to resemble methamphetamine but is not methamphetamine. The bags containing the "sham" were sprayed with clue spray and placed inside the MARIANO package. The package was then rewrapped to match its original condition. Additionally the same exterior containers and other interior contents inside the, MARIANO package were also placed back into the re-wrapped package. At approximately 9:45 AM, the undersigned in an undercover capacity delivered the MARIANO package to the address of 357 Jesus R. Mariano Rd., Mangilao, Guam 96913.

29. At the time of the delivery, the undersigned was met by an elderly male who stated that Helen Mariano is his daughter and he will give her the MARIANO package, as she is not home. Law Enforcement officers continued to surveil the residence and monitor the GPS/breeching systems. At approximately 12:17 PM, a Green Nissan Xterra License Plate MG 1145 entered the driveway of the residence. Helen Mariano was identified as the passenger of the vehicle and Phillip Benavente was the driver. Helen Mariano and Phillip Benavente were identified by a participating Guam Customs Officer Eugene Igros who

8

recognized Helen and Phillip from previous law enforcement activities.

30. Law Enforcement officers observed Helen Mariano enter the residence at which time the GPS signaled that the package was moving and a short time later the package left the residence and was moved into the 2012 Nissan Xterra; color Green, bearing Guam License Plate MG 1145. The vehicle continued to drive around the Mangilao area and entered another residence at approximately 12:50 PM. According to Google Map, this sole residence is located on the right side street with a yellow bus stop sign along Route 15 in Mangilao traveling northbound. Law Enforcement officers did not observe any street names. The MARIANO package remained in this residence and at approximately 1:45 PM, the GPS tracker showed that the package moved into the tree line in to jungle before it stopped responding and stopped emitting a signal. The vehicle driven by the sole occupant, Phillip Benavente left this residence at approximately 2:50 PM and traveled to a laundromat at Latte Heights. He was mirandized and stated he understood at which time he said "just take me to jail." The driver of the vehicle refused to identify himself. Guam Department of Motor Vehicle records revealed that Maria Benavente is the registered owner of 2012 Nissan Xterra; color Green, bearing Guam License Plate MG 1145. According to Officer Igros, he knows that Maria Benavente is deceased.

[handwritten annotation: My TRAINING EDUCATION and Experience led me to Believe THE TRACKER HAD Been Destroyed (RA TRACY)]

31. Law Enforcement officers believe that Helen Mariano is currently in the target residence, because she was not observed departing the residence and Law Enforcement officers believe that there is only one access road.

32. WHEREFORE, based on my training, experience, and conversations with other Law Enforcement Officers, I know that narcotics traffickers will many times keep evidence of narcotics trafficking secured in their residence, hotel rooms, and/or vehicles, rental

9

vehicles, lock boxes, garages, and safes. Based on the above, I believe there is probable cause to believe that the following articles are or will be present in due course within the vehicle:

a. Controlled substances, in particular, but not limited to, methamphetamine, methamphetamine processing and distribution equipment such as scales, cutting devices cutting materials, and packaging materials.

b. Items of personal property which tend to identify the person(s) in residence, occupancy, control or ownership of the vehicle that is the subject of this warrant, including but not limited to cancelled mail, deeds, leases, rental agreements, utility and telephone bills, statements, and identification documents.

c. Cash, currency, and records relating to income and expenditures of money and wealth from controlled substances, to wit, money orders, wire transfer and cashier checks receipts and bank statements, passbooks, checkbooks and check registers.

d. Airline tickets, notes and itineraries, airline schedules, bills, charge card receipts, hotel/motel/rent-a-car statements, correspondence with travel agencies and other travel-related businesses, airline/rent-a-car/hotel frequent flier/user cards and statements, passports and other papers relating to domestic/international travel.

e. Cellular phones, ledger books, bank records, telephone records, receipts, airline tickets, drug customer lists, drug paraphernalia, photos and other papers that relate to the importation, transportation, ordering, purchasing and the distribution of controlled substances, precious metals, jewelry, automobile titles, rental vehicles, stereo and electronics equipment and other items of value and/or proceeds of drug transactions and evidence of financial transactions relating to obtaining, transferring, U.S. currency, secreting or spending

10

large sums of money acquired and foreign banks documents and/or financial institutions and their attendant services, securities, cashier's checks, money drafts, letters of credit, brokerage houses, real estate, shell corporations and business fronts. Paperwork to include, but are not limited to, commercial airlines, commercial, ocean-going vessels, private automobiles, rental automobile agreements, government and contract mail services.

    f. Firearms and ammunition.

33. WHEREFORE, based upon the information contained herein, there is probable cause to believe that in the property described in paragraph 25 are evidence and instrumentalities of criminal offenses against the United States, to wit: violations of 21 U.S.C. §§ 841(a)(1) and 846.

**FURTHER AFFIANT SAYETH NAUGHT.**

_____
RICHARD A. TRACY
Postal Inspector
U.S. Postal Inspection Service

ATTACHMENT A

Sole Residence and curtilage located on the right side of Route 15 heading northbound with a yellow bus stop sign in Mangilao. A GTA underground cable bearing the number TF 40 190 can be found on the adjacent side street of the target residence.





13



14



# ATTACHMENT B

## ITEMS TO BE SEIZED

1. Controlled substances, in particular, but not limited to, methamphetamine. Methamphetamine processing and distribution equipment such as scales, cutting devices cutting materials, and packaging materials.

2. Items of personal property which tend to identify the person(s) in residence, occupancy, control or ownership of the vehicle that is the subject of this warrant, including but not limited to canceled mail, deeds, leases, rental agreements, utility and telephone bills, statements, and identification documents.

3. Cash, currency, and records relating to income and expenditures of money and wealth from controlled substances, to wit, money orders, wire transfer and cashier checks receipts and bank statements, passbooks, checkbooks and check registers.

4. Airline tickets, notes and itineraries, airline schedules, bills, charge card receipts, hotel/motel/rent-a-car statements, correspondence with travel agencies and other travel-related businesses, airline/rent-a-car/hotel frequent flier/user cards and statements, passports and other papers relating to domestic/international travel.

5. Cellular phones, ledger books, bank records, telephone records, receipts, airline tickets, drug customer lists, drug paraphernalia, photos and other papers that relate to the importation, transportation, ordering, purchasing and the distribution of controlled substances, precious metals, jewelry, automobile titles, rental vehicles, stereo and electronics equipment and other items of value and/or proceeds of drug transactions and evidence of financial transactions relating to obtaining, transferring, secreting or spending large sums of money acquired and foreign banks documents and/or financial institutions

and their attendant services, securities, cashier's checks, money drafts, letters of credit, brokerage houses, real estate, shell corporations and business fronts. Paperwork to include, but are not limited to, commercial airlines, commercial, ocean-going vessels, private automobiles, rental automobile agreements, government and contract mail services.

6. Firearms and ammunition.
7. Postal boxes, receipts, forms, and contents of MARIANO package.